IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| OREN TAVORY, | |
| Plaintiff, | |
| v. | Action No. 3:06–CV–628 |
| NTP, INC., | |
| Defendant. | |

MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Attorneys' Fees (Docket No. 111) by NTP. On September 20, 2006, Tavory sued NTP, seeking to be joined as an inventor to six patents owned by NTP, as well as damages for copyright infringement and unjust enrichment. After dismissing Tavory's claim for unjust enrichment on December 26, 2006, the Court granted summary judgment in favor of NTP on Tavory's other claims. See Tavory v. NTP, Inc., No. 06–CV–628 (E.D. Va. July 17, 2007) ("Tavory II"). Now, NTP asks the Court to award it the attorneys' fees that it incurred defending that suit. For the reasons stated below, NTP shall be awarded attorneys' fees of $36,899.57.

1.    Tavory's copyright claims

The Court may "in its discretion" award "a reasonable attorney's fee" to a party that prevails in a suit under Title 17. 17 U.S.C. § 505. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) (emphasizing that awarding attorneys' fees in suits under Title 17 is discretionary). See also Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000) (stating that attorneys' fees should not be awarded "as a matter of course"). In deciding whether to award attorneys' fees, the Court must consider four factors: "(1) the motivation of

the parties; (2) the objective reasonableness of the legal and factual positions advanced; (3) the need in particular circumstances to advance considerations of compensation and deterrence; and (4) any other relevant factor presented." Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 234 (4th Cir. 1993).

Applying that standard, the Fourth Circuit affirmed an award of attorneys' fees against a party that alleged that using copyrighted material in litigation was not "fair use," finding that the claim was motivated by a desire "to block potentially relevant evidence from being presented" in another suit. Bond v. Blum, 317 F.3d 385, 397–98 (4th Cir. 2003). Inconsistent conduct also evinces motivation warranting an award of attorneys' fees. See Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., 74 F.3d 488, 498 (4th Cir. 1996) (affirming an award of attorneys' fees against a party who claimed that animal mannequins cannot be copyrighted, while attempting to copyright his own animal mannequin designs).

Discussing the second factor established in Rosciszewski, the Fourth Circuit has held that if a party has pursued a patently frivolous position, failing to award attorneys' fees "will, except under the most unusual circumstances, constitute an abuse of discretion." Diamond Star Bldg. Corp. v. Freed, 30 F.3d 503, 506 (4th Cir. 1994) (noting that a party's refusal to settle a frivolous suit does not justify awarding attorneys' fees). But, attorneys' fees may be awarded even if a party's position was not frivolous. Bond, 317 F.3d at 398.

The third and fourth Rosciezewski factors have rarely played an important role in the Fourth Circuit's analysis of attorneys' fees awards. When the Fourth Circuit has discussed compensation and deterrence, it has often conflated that factor with other relevant considerations. See, e.g., Bond, 317 F.3d at 398 (stating without explanation that awarding attorneys' fees would deter the losing party from "bringing meritless actions," suggesting that the primary basis of the award was the strength of the losing party's position).

A.     Tavory's motivation

Tavory alleged that NTP infringed a copyright that he held on a piece of software. See Tavory II. NTP sought to defeat Tavory's claim by showing that his copyright was invalid because he recently created his copy of the software. In two requests for admission and one interrogatory, NTP asked whether Tavory possessed anything "that physically existed as of May 21, 1991 and which evinced the software in Exhibit A of the Complaint." Def.'s Mem. Supp. Mot. Att'ys' Fees at 5–6. Tavory replied that he did.

In fact, Tavory possessed a copy of the software that was created recently, based on a modified version of the original software, not a copy that existed in 1991. The Court regarded that distinction as significant when it granted summary judgment to NTP on Tavory's copyright infringement claim, finding that Tavory's registration of his copy of the software was invalid because that copy was a reconstruction. See Tavory II, slip op. at 7. Tavory has acknowledged that his copy of the software did not exist in 1991,[1] but he argues that his answers were justified because he had a "source code listing" of the software "as it existed as of May 21, 1991." See Pl.'s Opp. Def.'s Mot. Att'ys' Fees at 5 (emphasis added). Tavory's answer was a disingenuous effort to conceal a glaring weakness in his case, not a good-faith – but confused – attempt to respond to NTP's discovery requests. Significantly, Tavory does not claim that in December 2006, when he replied to NTP's discovery requests, he believed that he had something that existed in 1991 and evinced the software at issue. Instead, Tavory purposefully attempted to hide a fact that ultimately formed part of the basis of the Court's grant of summary judgment in favor of NTP, prolonging the litigation of this suit. The importance of the information NTP

---

[1] In his brief opposing this Motion, however, Tavory repeats – falsely – that his copy of the software "existed as of May 21, 1991." Pl.'s Opp. Def.'s Mot. Att'ys' Fees at 5.

3

sought makes the fact that Tavory answered in a misleading way less excusable. Thus, Tavory's motivation in falsely answering NTP's discovery requests warrants an award of attorneys' fees.

  B. <u>The strength of Tavory's position</u>

  NTP argues that Tavory's claim of copyright infringement was unfounded because (1) his suit was based on a copyright certificate that he obtained fraudulently, by concealing the date his copy of the software was created; (2) his theory of copyright infringement – that NTP violated his copyright by making copies for the purpose of litigation to enforce NTP's patents – was frivolous because no court has held that such copying is not "fair use"; and (3) Tavory made unreasonable discovery requests of NTP, forcing it to search its attorneys' files for copies of his software.

  Tavory responds that he did not fraudulently obtain a copyright certificate because he created his copy of the software by referring to documents that allowed him to identify the differences between that code and the original. Since he did not rely solely on his memory, he argues, he reasonably believed that his copy of the software was legally sufficient. Moreover, Tavory claims that the Copyright Office recently began granting copyrights based on a modified version of source code accompanied by an explanation of the differences from the original, suggesting that Tavory acted in good faith. To NTP's allegation that Tavory's legal theory was frivolous, he argues that whether copying – even for the purpose of litigation – is fair use must be determined on a case-by-case basis, and thus that his claim was not frivolous. And, Tavory argues that his discovery requests were reasonable, given that he learned after a lengthy dispute over discovery that NTP copied his software for purposes other than litigation.

The Court is not convinced by Tavory's arguments. Tavory knew that his copy of the software was created recently. The fact that the Copyright Office accepts modified versions of source code in some circumstances does not mean that a copy knowingly produced on the basis of other documents, years after the creation of the original, provides a legitimate basis for a claim of copyright infringement. Moreover, Tavory does not justify why he omitted the date that he created the copy of the software that he submitted to the Copyright Office, a significant omission. Nor did Tavory cite any controlling precedent establishing that copying for the purpose of litigation may <u>not</u> constitute fair use. While the Court refrained from "announc[ing] a rule that categorically shields litigants from copyright liability," <u>Tavory II</u>, slip op. at 11 n.10, implicitly accepting Tavory's view that allegations of copyright infringement should be evaluated on a case-by-case basis, Tavory did not offer any compelling arguments that NTP's use of the software at issue constituted a copyright violation. Finally, although Tavory discovered some relevant information, the Court ruled that NTP's opposition to Tavory's discovery requests was, in general, legitimate. <u>See</u> <u>Tavory v. NTP, Inc.</u>, No. 06–CV–628 (E.D. Va. Mar. 30, 2007) ("<u>Tavory I</u>"). Thus, Tavory's position was frivolous, justifying an award of attorneys' fees to NTP.

Even if Tavory's claims were not frivolous, his allegations were sufficiently weak to warrant an award of attorneys' fees under the standard applied in <u>Bond</u>. <u>See</u> 317 F.3d at 398 (ruling that attorneys' fees may be awarded even if a losing party's position was not frivolous).

C.  Compensation and deterrence

NTP argues that Tavory's claim was stale because it concerned a subject that was addressed in depositions of Tavory taken in 2002, in litigation to which Tavory was not a party. Although Tavory does not justify his delay in filing suit, NTP's argument lacks a legal basis. A deposition does not trigger a statute of limitations, and the fact that Tavory was asked about a basis of this suit during a unrelated proceeding did not obligate him to bring it at that time.

While Tavory made statements in those depositions that are inconsistent with the position he defended in this suit (e.g., in 2002 he claimed that he did not remember the role that he played in the creation of the software, and in 2006 he alleged that he helped to author it), see Tavory II, slip op. at 9, inconsistency is relevant for the purpose of evaluating a party's motivation in filing suit, not for weighing the need for compensation and deterrence. See Superior Form Builders, 74 F.3d at 498.

In addition, NTP's argument that Tavory waited to sue until the death of a key witness – a person knowledgeable about the authorship of the patents at issue – is unconvincing. It is far more plausible that NTP's lucrative settlement of its claims in other litigation, making ownership of its patents far more valuable, attracted Tavory's attention. Thus, this factor does not indicate that an award of attorneys' fees is warranted.

D.  Other relevant factors

The fact that NTP succeeded on every claim brought by Tavory suggests that an award of attorneys' fees is appropriate.

Thus, three of the four factors established in Rosciszewski, including the two factors to which the Fourth Circuit has given the most weight, indicate that NTP should be awarded the attorneys' fees that it incurred as a result of Tavory's claim of copyright infringement.

2.  Tavory's patent claims

Attorneys' fees may be awarded in patent litigation only "in exceptional cases." 35 U.S.C. § 285. The purpose of that provision is to enable a court to "award fees in an extraordinary case to prevent gross injustice" – e.g., in a case that was "obviously instituted for purposes of harassment." Stillman v. Edmund Scientific Co., 522 F.2d 798, 800 (4th Cir. 1975); see Am. Chain & Cable Co. v. Rochester Ropes, 199 F.2d 325, 330 (4th Cir. 1952) (ruling that attorneys' fees should be awarded only in "situations involving vexatious and unjustified litigation on the part of the patentee"). For example, courts have awarded attorneys' fees against a party that re-litigates an issue decided in a previous suit. See, e.g., Serrano v. Telular Corp., 111 F.3d 1578, 1585 (Fed. Cir. 1997). If a case is exceptional, "the aggrieved party is entitled to an award of the portion of its attorney fees which related to the vexatious litigation strategy and other misconduct." Samsung Elecs. Co. v. Rambus, Inc., 439 F. Supp. 2d 524, 572 (E.D. Va. 2006) (Payne, J.).

The Court granted summary judgment in favor on NTP on Tavory's patent claims, holding that Tavory failed to show that he significantly contributed to the conception of the patents and to corroborate his claims. Tavory II, slip op. at 14–15. However, the Court's opinion does not indicate that Tavory's claims were frivolous. Nor did the Court find that – contrary to NTP's contention – that Tavory re-litigated claims that were raised during his 2002 deposition, taken for litigation to which Tavory was not a party. In fact, NTP's argument is puzzling, since the fact that a subject arises during a deposition does not create a cause of action that the deponent must either pursue at that time or forfeit.

NTP also argues that Tavory's unsuccessful attempt to amend his Complaint to add a claim based on federal equity, after the Court dismissed his claim of unjust enrichment,

7

constitutes re-litigation. Tavory responds that the Federal Circuit has ruled that a federal equitable remedy is distinct from a claim for disgorgement of profits, see Univ. of Colo. Found., Inc. v. Am. Cyanamid Co., 342 F.3d 1298, 1304 (2003), and thus that he sought "at most" a "reasonable and good faith extension" of that holding. Regardless of the merits of that argument, in the context of awarding attorneys' fees "re-litigation" occurs only if a party contests an issue that was decided in a previous suit. See Serrano, 111 F.3d at 1585. Tavory's suit against NTP was his first, so his attempts to obtain relief in more than one way do not constitute re-litigation.

Tavory's suit apparently sought to establish his claim to some of NTP's property, not solely to harass the company. Thus, under the higher standard for awarding attorneys' fees that applies to patent litigation, an award of fees is not warranted for Tavory's patent claims.

3.   The amount to be awarded

NTP asks for fees based on its "lodestar," calculated on the basis of a "reasonable hourly rate." See Hensley v. Eckerhart, 461 U.S. 424, 433–34 (1983); Synthon IP, Inc. v. Pfizer Inc., 484 F. Supp. 2d 437, 443–44 (E.D. Va. Apr. 16, 2007) (Ellis, J.) (applying Hensley to patent litigation). The Fourth Circuit has ruled that a court awarding attorney's fees must apply each of the factors discussed in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978). See Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 189 (4th Cir. Feb. 21, 2007); but see In re MRRM, P.A., 404 F.3d 863, 869–70 (4th Cir. 2005) (affirming an award of attorneys' fees that did not apply Barber in detail). Those factors are "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the

8

litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." Barber, 577 F.2d at 226 n.28.

NTP's attorneys charged their standard rates, billing a total of $323,756. According to NTP, of that amount $36,900 was spent defending Tavory's copyright claim, $27,490 was spent on his patent claims, and $259,367 could not be allocated. NTP asserts, without providing detailed justification, that most of the latter sum was used to defend Tavory's copyright claim. NTP's failure to identify how those billings were spent precludes the Court from awarding fees other than those specifically allocated to the defense of Tavory's copyright claim, since it could not justify any additional award in the way that Barber requires. That result is consistent with the fact that the majority of effort expended on this suit concerned Tavory's patent claims, for which an award of attorneys' fees would be improper.

NTP's attorneys spent 141 hours defending Tavory's copyright claim, which involved complex factual and legal issues that required specialized knowledge. Tavory's allegations lacked merit, but they were not run-of-the-mill, and he pressed his claims vigorously – resolving this dispute required multiple motions to dismiss and a motion for summary judgment, as well as extensive discovery, including nine depositions in Chicago, Florida, and the District of Columbia. NTP's attorneys skillfully defended their client, achieving a successful result. Their billing rates were reasonable and commensurate with their experience and standing in the legal community, and this award is comparable to other awards in copyright litigation. Thus, upon due consideration of the factors established in Barber, the Court finds that an award of

$36,899.57 to NTP is appropriate, given the nature of this suit, the quality of work performed by its attorneys, and the results they obtained.

4.  Conclusion

Accordingly, NTP's Motion for Attorneys' Fees shall be GRANTED IN PART AND DENIED IN PART, and NTP shall be awarded $36,899.57.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this  9th  day of October 2007