IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| OREN TAVORY,<br><br>    Plaintiff,<br><br>v.<br><br>NTP, INC.,<br><br>    Defendant. | Action No. 3:06–CV–628 |

<u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on a Motion to Vacate Award of Attorneys' Fees by Tavory. The Motion presents a novel question, one that the Fourth Circuit has not answered: whether a defendant in a suit for copyright infringement is a "prevailing party" – i.e., eligible for an award of attorneys' fees – if the plaintiff's claim was dismissed because it was based on an invalidly-registered copyright. Since the Court's ruling that Tavory deposited a reconstruction with the United States Copyright Office entails that his claim of copyright infringement could not have succeeded, the Court concludes that NTP, Inc. "prevailed." Thus, Tavory's Motion shall be DENIED.

1.

NTP owns several patents covering technology used in electronic mail systems. Those patents were developed partly by Thomas Campana, a founder of NTP. Campana was also an officer of two other companies: Telefind, which operated a nationwide paging network; and ESA, which manufactured electronic hardware components. Telefind hired

Tavory as a consultant to work with Campana and two of ESA's engineers on developing a laptop computer capable of wireless communication. By 1990, Campana's team had created a system that could send e-mail between a computer and a wireless device. By 1991, however, Telefind discontinued the project, and Tavory was no longer associated with Campana's work. Subsequently, Campana and ESA's engineers obtained six patents for an "electronic mail system" and other technologies. The first of their applications was filed in May 1991, but the other five applications were filed between 1994 and 1998, years after Tavory stopped working with Campana.

In 2001, after NTP acquired the rights to Campana's patents, it sued Research in Motion, Ltd. ("RIM") in this Court, alleging that RIM's popular BlackBerry device infringed several of the patents. Tavory was deposed in 2002 in connection with that litigation. While he alleged (without providing any evidence) that he wrote source code covered by those patents, he did not assert at that time that he should have been named as an inventor on any of the patents. Nor did he claim a copyright on any of the source code.

After protracted litigation, RIM announced on March 3, 2006 that it would pay NTP $612.5 million to license the patents at issue, a settlement that was widely publicized. Shortly thereafter, Tavory applied for a copyright covering "push software," a portion of the source code covered by NTP's patents that "pushes" e-mail onto a paging network for delivery. He deposited a copy of the software with the United States Copyright Office, which registered a copyright in Tavory's name. Then, on September 20, 2006, about six months after RIM announced its settlement with NTP, Tavory filed suit in this Court, seeking

to be joined as an inventor to six of the patents at issue in the RIM litigation, as well as damages for copyright infringement and unjust enrichment.

After dismissing Tavory's claim for unjust enrichment, see <u>Tavory v. NTP, Inc.</u>, No. 06–CV–628 (E.D. Va. Dec. 26, 2006), the Court granted summary judgment to NTP on Tavory's other claims, see <u>Tavory v. NTP, Inc.</u>, 495 F. Supp. 2d 531 (E.D. Va. July 17, 2007) ("<u>Tavory II</u>"). In <u>Tavory II</u>, the Court found that Tavory produced the copy of the push software that he deposited with the Copyright Office by modifying a relatively recent version of the source code, relying solely on his memory to redact changes that had been made to the source code since 1990, when he allegedly wrote it. <u>Id.</u> at 536. As a reconstruction – a copy produced on the basis of recollection – Tavory's deposit copy was not a "bona fide copy"; thus, it did not satisfy the Copyright Act's requirements for registering a copyright. <u>Id.</u> at 535–36. Adopting the reasoning of <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1211 (9th Cir. 1998), the Court concluded that because Tavory's deposit copy was a reconstruction, it lacked subject matter jurisdiction over his claim for copyright infringement. <u>Id.</u> at 536–37. The Court rejected Tavory's patent claims on other grounds. See <u>id.</u> at 539–41.

Several months after <u>Tavory II</u>, the Court awarded NTP attorneys' fees of $36,899.57, the sum that NTP was able to allocate to its defense of Tavory's claim of copyright infringement. <u>Tavory v. NTP, Inc.</u>, No. 06–CV–628, 2007 WL 2965048, *6 (E.D. Va. Oct. 9, 2007) ("<u>Tavory III</u>"). The Court refused to award $259,367 that NTP could not allocate between Tavory's claim of copyright infringement and his patent claims. <u>Id.</u> at

\*5–6. The Court justified its award in part because Tavory responded evasively to three of NTP's discovery requests:

> NTP asked whether Tavory possessed anything "that physically existed as of May 21, 1991 and which evinced the [push software]." Tavory replied that he did. In fact, Tavory possessed a copy of the software that was created recently, based on a modified version of the original software, not a copy that existed in 1991. The Court regarded that distinction as significant when it granted summary judgment to NTP on Tavory's copyright infringement claim, finding that Tavory's registration of his copy of the software was invalid because that copy was a reconstruction. Tavory has acknowledged that his copy of the software did not exist in 1991, but he argues that his answers were justified because he had a "source code listing" of the software "<u>as it existed</u> as of May 21, 1991." Tavory's answer was a disingenuous effort to conceal a glaring weakness in his case, not a good-faith – but confused – attempt to respond to NTP's discovery requests.... Tavory purposefully attempted to hide a fact that ultimately formed part of the basis of the Court's grant of summary judgment in favor of NTP, prolonging the litigation of this suit.

<u>Tavory III</u>, 2007 WL 2965048 at \*2 (internal punctuation and citations omitted). Tavory now asks the Court to vacate that award, arguing that because the Court lacked subject matter jurisdiction over his claim of copyright infringement, NTP is not a "prevailing party" eligible for an award of attorneys' fees.

2.

In the United States, a party to a lawsuit is generally responsible for paying its own attorneys' fees, even if it successfully prosecutes (or defends) the suit. <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 602 (2001). With few exceptions, a court will shift the burden of paying a party's attorneys' fees to its adversary only if a statute expressly authorizes doing so. <u>Id.</u>; see <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45 (1991) (recognizing that "in narrowly defined circumstances courts have inherent power to assess attorney's fees"). The Copyright Act, the basis of Tavory's

claim of copyright infringement, is one of the statutes that provides that authority; it permits a court to "award a reasonable attorney's fee to the prevailing party" in a suit brought under the Act. 17 U.S.C. § 505. Accordingly, attorneys' fees are awarded routinely in copyright cases. See, e.g., Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352, 362 (6th Cir. June 14, 2007) (noting that attorneys' fees are awarded to the prevailing party in a copyright action as a rule). And, defendants are as eligible as plaintiffs to receive their attorneys' fees. Fogerty v. Fantasy, Inc., 510 U.S. 517, 527, 534 (1994) (reasoning that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright").

Whether a party "prevails" in this context is often disputed, however. The Supreme Court most recently clarified the meaning of "prevailing party" in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, a suit by assisted-living facilities in West Virginia against several state entities after the facilities failed an inspection and were ordered to close. 532 U.S. at 600–01. After the facilities filed suit, the defendants agreed not to enforce the closure order until the case was resolved. Id. at 601. While the suit was pending, however, the West Virginia legislature changed the rules governing the facilities, eliminating the provision with which they failed to comply. Id. Since there was no longer any basis for ordering the facilities to close, the suit was dismissed. Id. The facilities attempted to recover their attorneys' fees, arguing that they "prevailed" because their suit impelled the defendants to change their conduct. Id. The

Court rejected the facilities' "catalyst theory," however, ruling that a party "prevails" only if a court sanctions a material change in the legal relationship of the parties. Id. at 604–05. The Court noted that its interpretation applies to every federal statute allowing a court to award attorneys' fees to a "prevailing party." Id. at 600, 603 n.4.

In addition to resolving disagreement about the validity of the "catalyst theory," Buckhannon reiterated several principles that were established by previous Supreme Court opinions interpreting "prevailing party" fee-shifting statutes. From those cases, three themes emerge: an award of attorneys' fees requires (1) a decision by a court that (2) addresses the merits of the parties' dispute and (3) affects the parties' legal relationship, providing effective relief.

First, a decision by a court – not a party – must have affected the parties' legal relationship. Id. at 605 (stating that "a defendant's voluntary change in conduct ... lacks the necessary judicial imprimatur"); see Statewide Reappointment Advisory Comm. v. Beasley, 99 F.3d 134, 137 (4th Cir. 1996) (Niemeyer, J., concurring) (stating that a party "prevails" only if it obtains relief from a court, "not from some other process"). Thus, for example, a defendant does not "prevail" if a plaintiff voluntarily dismisses its claim. See, e.g., Chambers v. Time Warner, Inc., 279 F. Supp. 2d 362, 365 (S.D.N.Y. 2003).

Second, the court's decision must reflect a judgment about the merits of the parties' dispute. As the legislative history of a prominent "prevailing party" fee-shifting statute demonstrates, Congress decided that only "a determination of the substantial rights of the parties" justifies a departure from this country's practice of requiring parties to pay their own

attorneys' fees. H.R. Rep. No. 94–1558, at 5 (1974) (cited in Hanrahan v. Hampton, 446 U.S. 754, 758 (1980)). Thus, a party does not "prevail" by surviving a preliminary motion (e.g., a motion to dismiss for lack of jurisdiction), Buckhannon, 532 U.S. at 605, or succeeding on an interlocutory appeal, see Hewitt v. Helms, 482 U.S. 755, 760 (1987) (noting that obtaining a favorable interlocutory ruling "is not the stuff of which legal victories are made"), since neither type of ruling determines the parties' rights. Nor does a party "prevail" by obtaining a preliminary injunction. Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 276–77 (4th Cir. 2002). Even though a court evaluates whether a party's claim is likely to succeed before granting a preliminary injunction, the court does not actually rule on the merits of the claim before granting the preliminary injunction. Id. at 276; see RCA Records, a Div. of RCA Corp. v. All-Fast Sys., Inc., 594 F. Supp. 335, 337, 340 (S.D.N.Y. 1984) (refusing to award attorneys' fees after the entry of a preliminary injunction, even though the court found that "[a] clearer case of copyright infringement could hardly be imagined"). Moreover, a court deciding whether to grant a preliminary injunction weighs other factors, too; thus, the entry of a preliminary injunction may not reflect the court's (initial) assessment of the claim's strength. Smyth, 282 F.3d at 276–77.

Third, the court's decision must effectively change the parties' legal relationship. See Rhodes v. Stewart, 488 U.S. 1, 3–4 (1988) (per curiam); Hewitt, 482 U.S. at 761–62. In Rhodes, the Court ruled that prisoners who won a judgment requiring a prison to modify its policies did not "prevail" because they were no longer in custody when the judgment was entered – thus, the judgment "could not in any way have benefit[t]ed either" of the

prisoners. 488 U.S. at 2, 4. In <u>Hewitt</u>, the Court stated that a prisoner who received merely "the moral satisfaction of knowing that a federal court concluded that his rights had been violated" did not "prevail," noting that the judgment did not provide any "judicial relief." 482 U.S. at 760, 762. Stated differently, only judicial action that provides genuine relief (e.g., by requiring a party to pay damages or change its behavior, <u>see</u> <u>Rhodes</u>, 488 U.S. at 4) can support an award of attorneys' fees.

A judgment on the merits of a claim and a settlement agreement enforced by a consent decree satisfy those requirements. <u>Buckhannon</u>, 532 U.S. at 604. While the <u>Buckhannon</u> Court discussed only those forms of judicial action, the Fourth Circuit has suggested that they are examples of judicial action that provides the necessary judicial imprimatur – not an exhaustive list.[1] <u>Smyth</u>, 282 F.3d at 281. Several other circuits have also reached that conclusion. <u>See</u> <u>Rice Servs., Ltd. v. United States</u>, 405 F.3d 1017, 1025 (Fed. Cir. 2005); <u>Roberson v. Giuliani</u>, 346 F.3d 75, 81 (2d Cir. 2003); <u>T.D. v. LaGrange Sch. Dist. No. 102</u>, 349 F.3d 469, 478 (7th Cir. 2003); <u>Am. Disability Ass'n, Inc. v. Chmielarz</u>, 289 F.3d 1315, 1319 (11th Cir. 2002). <u>But see</u> <u>Christina A. v. Bloomberg</u>, 315

---

[1] In fact, in a case decided before <u>Buckhannon</u>, the Fourth Circuit affirmed an award of attorneys' fees to an employer that "secured the dismissal, with prejudice, of [claims by the Secretary of Labor that the employer violated ERISA] without conceding that it had committed any prohibited transactions." <u>Reich v. Walter W. King Plumbing & Heating Contractor, Inc.</u>, 98 F.3d 147, 151 (4th Cir 1996). The employer gave up nothing, promising only "to do what it was already legally required to do: adhere to ERISA." <u>Id.</u> (noting a comment by the district court that "[i]t is difficult to imagine how King Plumbing could have fared any better"). Since <u>Reich</u> did not depend on an application of the "catalyst theory," <u>Buckhannon</u>'s focus, <u>see</u> 532 U.S. at 606, it is unlikely that <u>Buckhannon</u> would have affected the outcome of <u>Reich</u>. That case provides further evidence that the substance, not the form, of a court's resolution of a dispute determines whether a party "prevailed."

F.3d 990, 993 (8th Cir. 2003).  For example, in 2005, the Federal Circuit recently ruled that an "equivalent" of a ruling on the merits of a claim is sufficient.  Rice Servs., 405 F.3d at 1025.  And, the Second Circuit has stated that "judicial action other than a judgment on the merits or a consent decree can support an award" if the action carries "sufficient judicial imprimatur."  Roberson, 346 F.3d at 81.  These opinions suggest that, while a court may award attorneys' fees only after evaluating the "legal merit" of a claim, Buckhannon, 532 U.S. at 605, a "judgment on the merits" is not the only kind of decision that suffices.[2]

3.

Neither the Supreme Court nor the Fourth Circuit have decided whether a ruling dismissing a claim of copyright infringement on the ground that the plaintiff deposited a reconstruction with the Copyright Office materially changes the parties' legal relationship, conferring "prevailing party" status on the defendant.[3]  The Fourth Circuit has addressed relevant questions on two occasions, however.

In Wendt v. Leonard, 431 F.3d 410, 411 (4th Cir. 2005) ("Wendt II"), the court affirmed the denial of a motion to vacate an award of attorneys' fees by a plaintiff whose civil rights suit was dismissed for lack of subject matter jurisdiction.  The court upheld the

---

[2] In fact, two circuits interpreting Buckhannon have concluded that a ruling by an administrative agency – a decision that lacks a court's imprimatur – may confer "prevailing party" status because it changes the parties' legal relationship and could be enforced by a court.  P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 854 (3d Cir. 2006); A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 76 (2d Cir. 2005).

[3] The Supreme Court has ruled, however, that a court may award attorneys' fees in an action over which it never had subject-matter jurisdiction.  See Willy v. Coastal Corp., 503 U.S. 131, 137 (1992) (applying Federal Rule of Civil Procedure 11).

award of attorneys' fees, even though the Tax Injunction Act, 28 U.S.C. § 1341, prevented the district court from asserting jurisdiction over the plaintiff's claims, which he was required to pursue in state court, see Wendt v. Leonard, 60 Fed. App'x 487 (4th Cir. 2003). Wendt II is not controlling, however, because it addressed whether the award was void, in the context of Federal Rule of Civil Procedure 60(b)(4). See 431 F.3d 413–15. Focusing on the "unique nature of the extraordinary relief" sought by the plaintiff – the vacation of a final order that could no longer be appealed – the Fourth Circuit found that the award was not void because it had an "arguable basis," a relatively easy standard to satisfy. 431 F.3d at 413–14. Although the Fourth Circuit acknowledged in Wendt II that courts have disagreed about whether a court may award attorneys' fees under a "prevailing party" fee-shifting statute if it lacks subject matter jurisdiction over the action, it declined to resolve that issue. See id. at 414. Thus, since Tavory does not seek extraordinary relief, the "arguable basis" standard does not apply to Tavory III.

Of greater force is the Fourth Circuit's statement in an opinion issued two months after Buckhannon that a "prevailing party" fee-shifting statute applies even if "there are jurisdictional defects in a case." Dang v. Comm'r, 259 F.3d 204, 208 (4th Cir. 2001). In Dang, taxpayers challenged the Tax Court's denial of their motion for costs under 26 U.S.C. § 7430. That provision is similar to section 505 of the Copyright Act. It provides:

> In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for ... reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a).  In the context of that provision, "reasonable litigation costs" include attorneys' fees, id. § 7430(c)(1)(B)(iii), and a "prevailing party" is one that "has substantially prevailed with respect to the amount in controversy, or ... has substantially prevailed with respect to the most significant issue or set of issues presented," subject to several exceptions.  Id. § 7430(c)(4).

The taxpayers in Dang argued that they were "prevailing parties," as defined by section 7430, because the Tax Court lacked subject matter jurisdiction over their dispute.  259 F.3d at 206.  The Tax Court ruled against the taxpayers on a different basis, concluding that they did not "prevail" because they agreed with the Commissioner that a tax deficiency existed.  Id. at 207, 208.  But, the Tax Court noted that it could have decided whether the taxpayers were entitled to costs even if their case was jurisdictionally defective, id., citing its earlier ruling that it "may award litigation costs pursuant to section 7430 after we determine that a case should be dismissed for lack of jurisdiction."  Id. at 209 (citing Hubbard v. Comm'r, 89 T.C. 792, 798 (1987).  The Fourth Circuit agreed, stating that the Tax Court's decision did not depend on its finding that it had jurisdiction – and affirming that "the Tax Court correctly held that the provisions of § 7430 apply 'even where there are jurisdictional defects in a case.'"  259 F.3d at 208–209.

While the parties' positions in Dang differ from those in this matter, the Fourth Circuit's commentary on the Tax Court's analysis suggests a court may award attorneys' fees in a matter regardless of whether "jurisdictional defects" exist.  While Dang does not establish whether a party "prevails" because a court rules that it lacks subject matter

11

jurisdiction, it addresses a court's power to address that issue. Thus, Dang places the Fourth Circuit among those circuits that have ruled in various contexts that a court may award attorneys' fees after dismissing an action for lack of subject matter jurisdiction. See Citizens for a Better Env't v. Steel Co., 230 F.3d 923, 925–28 (7th Cir. 2000) ("[A] court may lack authority to resolve the merits of a claim yet have jurisdiction to award costs and attorneys' fees to the prevailing party.").[4] But see, e.g., Elwood v. Drescher, 456 F.3d 943, 948 (9th Cir. 2006) ("Where a claim is dismissed for lack of subject matter jurisdiction, the defendant is not a prevailing party within the meaning of § 1988, and the district court accordingly lacks jurisdiction to award attorney's fees.").

Tavory argues that Goldsmith v. Mayor & City Council of Baltimore, 987 F.2d 1064, 1069 (4th Cir. 1988), controls the Court's decision. In Goldsmith, the Fourth Circuit stated that "a jurisdictional dismissal ... is not a judgment on the merits for purposes of res judicata." Id. at 1069. But, the inclusion of the modifying phrase "for purposes of res judicata" suggests that the Fourth Circuit did not intend to decide how a dismissal for lack of jurisdiction should be treated for all purposes. Whereas the doctrine of res judicata

---

[4] Last year, another circuit affirmed an award of attorneys' fees in a case in which the plaintiff "fail[ed] to meet the jurisdictional prerequisite of registering its copyrights prior to filing suit," a failure that "rendered [the plaintiff's] Copyright Act claims objectively unreasonable." Invision Media Svcs., Inc. v. Glen J. Lerner, 175 Fed. App'x 904, 907 (9th Cir. 2006) (vacating the award on another ground). The Ninth Circuit did not explain why the fact that the plaintiff's claim was "objectively unreasonable" conferred "prevailing party" status on the defendant, however. The Ninth Circuit's expansive interpretation of the Copyright Act's fee-shifting provision may reflect a compromise with its rigid stance on the relationship between subject matter jurisdiction and attorneys' fees. See, e.g., Elwood v. Drescher, 456 F.3d 943, 948 (9th Cir. 2006). However, since the Fourth Circuit has not suggested that the reasonableness of a plaintiff's claim is relevant to determining whether a defendant "prevailed," this Court does not adopt the Ninth Circuit's rationale.

reflects concerns about due process and finality, the fee-shifting provision of the Copyright Act promotes different goals. See Fogerty, 510 U.S. at 525–527 (noting that the Copyright Act is not intended simply to "maximiz[e] the number of meritorious suits for copyright infringement"). Thus, the way that a dismissal is treated for the purpose of res judicata does not determine how it should be treated in the context of the question facing the Court.

Tavory also urges the Court to adopt a position taken by the First Circuit, which recently affirmed a denial of attorneys' fees to the defendant in a suit for copyright infringement that was dismissed for lack of subject matter jurisdiction because the plaintiff deposited a reconstruction with the Copyright Office. See Torres-Negron v. J & N Records, LLC, — F.3d —, 2007 WL 2846117, *11 (Oct. 2, 2007). Since the defendant did not receive a judgment on the merits of the case, the First Circuit ruled, it was not a "prevailing party" in the context of 17 U.S.C. § 505. Id. While Torres-Negron is a precedent – in fact, it is the only decision on point identified by either party or the Court – it is not persuasive. The opinion's analysis is cursory, addressing the issue before the Court in a few lines without carefully examining the meaning of "prevailing party." In fact, the First Circuit's observation that a dispute over the validity of a deposit copy may implicate the merits of a case, id. at 11, supports the Court's conclusion that its award of attorneys' fees in Tavory III was appropriate.

4.

Those opinions provide the context of the question facing the Court: whether its ruling that Tavory did not validly register his copyright materially altered his legal

13

relationship with NTP, conferring "prevailing party" status on NTP. The elements of a claim of copyright infringement are "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." Feist Publ'ns v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). In addition to proving those elements, a party suing for copyright infringement must comply with a "jurisdictional prerequisite": subject to an exception that does not apply in this case, "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); see Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 283 (4th Cir. 2003) (describing 17 U.S.C. § 411(a) as establishing a "jurisdictional prerequisite"). Tavory II implicated the merits of Tavory's claim, as well as that jurisdictional prerequisite: since Tavory deposited a reconstruction with the Copyright Office, he did not successfully register his claim as required by Title 17, and for that reason, Tavory's copyright was not valid.[5]

Whereas a plaintiff who owns a valid copyright but does not comply with section 411(a) before filing suit can remedy that defect easily – by registering its copyright – the problem with Tavory's claim could not[6] be remedied, because (as he acknowledged) he

---

[5] Tavory II does not represent an exercise of "hypothetical jurisdiction." See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). Since a single finding by the Court addressed Tavory's compliance with section 411(a) and implicated the merits of his claim, the Court did not illegitimately rule on the merits of Tavory's claim after finding that it lacked subject matter jurisdiction.

[6] Even if in the future Tavory secures a valid copyright on the push software, any claim of copyright infringement that he brought on the basis of that copyright would be distinct from the claim decided in Tavory II. With respect to that claim, the Court's ruling materially altered the parties' relationship.

does not have an acceptable copy of the push software. So, even though the Court framed its analysis in Tavory II in terms of section 411(a), its ruling demonstrates clearly that Tavory's claim of copyright infringement could not have succeeded on its merits.

For that reason, Tavory II differs from some other types of dismissals for lack of subject matter jurisdiction. If a court dismisses an action because it lacks diversity jurisdiction, its ruling does not preclude a state court from resolving the action on its merits. See, e.g., Palmer v. City Nat'l Bank of W. Va., 498 F.3d 236, 239–40 (4th Cir. Aug. 16, 2007). Or, if a court dismisses a claim because it is not yet ripe, the claim may be justiciable at a later time. See, e.g., Jackson v. Jackson, 857 F.2d 951, 956 n.1 (4th Cir. 1988). Or, if a plaintiff seeks judicial relief before exhausting a primary administrative remedy, a ruling dismissing the suit does not preclude a court from exercising jurisdiction over the suit after the plaintiff complies with the proper procedure. See Mardirossian v. Paul Revere Life Ins. Co., 286 F.3d 733, 735 (4th Cir. 2002). Or, in the Fourth Circuit, if a plaintiff sues an entity that enjoys sovereign immunity from suit, the defendant may agree to waive its immunity at some time in the future, permitting the plaintiff to proceed. See, e.g., Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480–81 (4th Cir. 2005) (stating that the Eleventh Amendment limits federal courts' subject matter jurisdiction); Abril v. Virginia, 145 F.3d 182, 184 (4th Cir. 1998) (treating a dismissal on Eleventh Amendment grounds as a dismissal for lack of subject matter jurisdiction).

Not every ground for dismissing a claim for lack of subject matter jurisdiction fits this model, but in general a dismissal for lack of subject matter jurisdiction postpones an

adjudication of the parties' legal relationship, rather than materially affecting it. As the Seventh Circuit observed, "[s]ometimes victory on a jurisdictional point merely prolongs litigation. A defendant may persuade the court that the plaintiff has sued too soon, or in the wrong court, or failed to jump through a procedural hoop. Then the dispute will continue later, or elsewhere, and it remains to be seen who will prevail." Citizens for a Better Env't, 230 F.3d at 929–30.

In contrast, the import of Tavory II is that no court will ever judge the merits of Tavory's claim for copyright infringement. Tavory does not reflect a judgment about which court should hear his claims, or when, but a conclusion that Tavory's claim was inherently weak. The Court's ruling established that NTP does not have to pay damages to Tavory or change its behavior – the best outcome for which NTP could have hoped. Cf. id. at 929. For NTP, Tavory II was "a triumph in the war, not just in a battle or even a campaign." Id. at 930. Since the Court's ruling materially altered the legal relationship of Tavory and NTP, resolving their dispute in a way that bears the Court's clear imprimatur, NTP clearly "prevailed."

Treating Tavory II as addressing only the Court's subject matter jurisdiction, as Tavory suggests,[7] would imply that any claim of copyright infringement decided on the

---

[7] Tavory's argument that a court that lacks subject matter jurisdiction "may not proceed to adjudicate the merits of any aspect of the claim" is also undermined by 28 U.S.C. § 1447(c), which provides in part that in a case removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." While section 1447(c) clearly does not govern this matter, it refutes the general proposition that Tavory urges on the Court.

ground that the copyright at issue was invalid would also implicate section 411(a) – since the copyright would not have been validly registered before the suit was filed. Stated differently, Tavory's position blurs the distinction between a claim of copyright infringement that does not succeed because it lacks merit and one that cannot succeed because it is brought in a court without jurisdiction. While a single finding may in some cases implicate both the merits of a claim and a jurisdictional prerequisite for litigating the claim, as in Tavory II, the Court declines to conflate the two issues in principle.

Moreover, the Court's characterization of Tavory II is consistent with the Supreme Court's discussion of the proper use of "jurisdiction" in Arbaugh v. Y&H Corp., 546 U.S. 500, 511 (2006). In Arbaugh, the Court held that the provision of Title VII defining an "employer" as an entity employing at least fifteen people should be classified as an element of a plaintiff's case, not a condition that must be satisfied for a court to exercise jurisdiction over the plaintiff's claim. Id. at 516. Unless Congress specifies that a limit on the scope of a statute affects courts' jurisdiction, the Court continued, the statute should not be treated as jurisdictional. Id. The section of the Copyright Act establishing that an applicant for a copyright must deposit a copy of his work with the Copyright Office does not specify that the requirement is jurisdictional.[8] See 17 U.S.C. § 408. Thus, the validity of a copy

---

[8] Whereas section 411 does affect courts' jurisdiction over claims of copyright infringement, it is the fact that an applicant for a copyright follows the procedures prescribed in Title 17 – not the ultimate validity of a certificate of copyright issued as a result – that confers jurisdiction. Cf. Macklin v. Mueck, 373 F. Supp. 2d 1334, 1336 (S.D. Fla. 2005) (exercising jurisdiction over a claim for copyright infringement by a plaintiff who produced a certificate of copyright registration at the outset of his suit, even though the copyright was cancelled while the suit was pending).

deposited with the Copyright Office in accordance with section 408 is in effect an element of a claim of copyright infringement, not a condition of a court's power to hear that claim. In light of Arbaugh, this Court's finding that Tavory failed to comply with section 408 does not deprive the Court of the power to award NTP its attorneys' fees.[9]

5.

The Court notes that awarding attorneys' fees to NTP is necessary to promote the purposes of the Copyright Act. Adopting Tavory's position would allow a party to litigate a relatively weak claim – one that is not based on a valid copyright – without having to pay its adversary's attorneys' fees. Yet a party with a stronger claim, one that is based on a valid copyright but fails for another reason, would be liable for paying those fees. Adopting that rule might even create an incentive for a litigious person to apply for a copyright – knowing that ultimately it might be invalidated, but taking advantage of the fact that the Copyright Office does not evaluate the "basic validity" of a copyright claim before issuing a certificate, see H.R. Rep. No. 94–1476, at 157 (1976), as reprinted in 1976 U.S.C.C.A.N. 5659, 5773 – for the sole purpose of filing suit. Shifting the burden of paying an adversary's attorneys' fees to the owner of a valid copyright because it cannot prove a logically subsequent

---

[9] Moreover, in Arbaugh the Court observed that many courts have not meticulously differentiated questions of subject matter jurisdiction from those involving a "threshold fact." Id. at 511. The Court criticized opinions that fail to address that distinction as "unrefined," calling them "'drive-by jurisdictional rulings' that should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit." Id. Given that statement, to the extent that Tavory II does not explicitly analyze whether Tavory's failure to deposit a suitable copy with the Copyright Office affects the Court's jurisdiction or a threshold fact bearing on the merits of his claim, Tavory II does not control the Court's analysis of whether it properly awarded NTP its attorneys' fees.

element of a claim of infringement, while allowing a party who does not own a valid copyright to litigate without having to bear that burden, would upset the balance of interests embodied by the Copyright Act.

Finally, if considerations of equity are relevant, they favor awarding NTP its attorneys' fees. See Shaw v. Hunt, 154 F.3d 161, 167–68 (4th Cir. 1998) (awarding attorneys' fees to intervening parties who lacked standing partly on the basis of "special circumstances"). Tavory's evasive answers to NTP's discovery requests concealed the fact that his copyright was invalid, prolonging this litigation by several months and forcing NTP to spend a considerable sum defending itself – most of which NTP must pay. Although Tavory suggests that the question of whether his deposit copy was a reconstruction is a novel and difficult one, see Pl.'s Reply Mem. at 5, he did not defend his position candidly by providing the Court with the information it needed to evaluate and resolve his argument, including information that bears on the issue facing the Court now. Had Tavory acknowledged that his copyright was based on a reconstruction, the Court could have decided his claim of copyright infringement more quickly, reducing the cost of this litigation for both parties and saving judicial resources.

For the reasons stated, Tavory's Motion shall be DENIED.

/s/
James R. Spencer
Chief Untied States District Judge

ENTERED this __3rd__ day of December 2007